LYMAN LOCKE & another *vs.* GEORGE H. HOMER.

Suffolk. November 18, 1879; March 1. — April 8, 1881.

The acceptance by the grantee of a deed poll containing a covenant that the land conveyed is free from incumbrances except a mortgage previously made by the grantor, "which the grantee assumes and agrees to hold the grantor harmless from," constitutes a contract by the grantee, not merely to indemnify the grantor, but to pay the mortgage debt; and the measure of damages, in an action brought by the grantor against the grantee upon this contract after that debt has become payable, is the unpaid amount of that debt, although no part of it has been paid by the plaintiff.

A., by a deed poll, conveyed land to B., and B. conveyed it to C. by a deed which recited that the premises were the same conveyed by A. to B. *Held,* in an action by A. against B. on a contract contained in their deed, that the deed from B. to C. was admissible to prove that B. had accepted the deed from A.

·GRAY, C. J. This is an action of contract. The facts of the case, as found by the Chief Justice of the Superior Court, before whom it was tried without a jury, are as follows:

On September 20, 1873, the plaintiffs, being the owners of a parcel of land in Newton, mortgaged it to Margaret Aitken to secure the payment in three years from date of their promissory note to her for $4000; and on June 12, 1875, conveyed the land to the defendant by a deed, expressed to be " in consideration of six thousand dollars paid by " him, describing the land by metes and bounds, and containing covenants of seisin in fee, good right to sell and convey, freedom from incumbrances " except a mortgage to Margaret Aitken of four thousand dollars, which the grantee assumes and agrees to hold the grantors harmless from," and of warranty against all lawful claims and demands except as aforesaid. The consideration of this deed in fact consisted of $2000 paid in money or its equivalent, and of the defendant's promise to pay the note and mortgage for $4000.

On August 9, 1877, the defendant conveyed the land to George W. Miller, describing it by metes and bounds, and as being the same premises conveyed to the defendant by the plaintiffs by deed dated June 12, 1875. The deed to Miller was admitted in evidence against the defendant's objection, but was clearly competent to prove that he had accepted the previous deed therein mentioned, and is not shown to have been offered or admitted for any other purpose.

The plaintiffs paid the interest which fell due on the mortgage note before their conveyance to the defendant. The defendant paid some interest falling due after that conveyance, and $1500 of the principal sum, and then refused to make any further payments. On July 1, 1878, the land was sold by Aitken under a power of sale in the mortgage, after due notice to the defendant and all other persons interested, for the sum of $850; and this sum (deducting $45, the expenses of sale), as well as the other sums paid as aforesaid, was applied by Aitken toward the payment of the note.

The plaintiffs in their declaration set forth the facts above stated, and sought to recover the amount remaining due upon the note. They have never paid any part of the principal of the note, or of the interest except as above mentioned.

The defendant asked the judge to rule that the language in the deed from the plaintiffs to him did not show a contract on

his part to pay the mortgage, but a contract to indemnify the grantors in case they sustained any loss; and that, if they had sustained no loss, they could not recover. But the judge refused so to rule; and ruled that if the defendant accepted the deed from the plaintiffs to him, and agreed to pay the mortgage note as part of the consideration of the conveyance, he thereby contracted to pay the amount then due and unpaid on the note, and the plaintiffs were entitled to recover in this action a sum of money equal to that amount; and ordered judgment for the plaintiffs for the amount claimed and interest; and the defendant alleged exceptions.

The case, having been submitted on briefs, has been considered by all the judges. The plaintiffs, in support of their action, rely upon the decision in *Furnas* v. *Durgin*, 119 Mass. 500. The defendant contends that that case is distinguishable from this; in other cases which have come up while this has been under advisement, it has been argued that the decision in *Furnas* v. *Durgin* is erroneous in principle; and the court, after much consideration, is not unanimous. It is therefore proper to state somewhat fully the grounds and authorities upon which that decision rests.

By the common law, where the condition of an obligation was merely to indemnify and save harmless, the defendant might plead *non damnificatus;* but where the condition was to discharge or acquit the plaintiff from such and such a bond, or other particular thing, the plea must aver performance, and a plea of *non damnificatus* was bad. 1 Saund. 116, note.

Although a surety, whose rights against his principal rest only upon the liability implied by law from the relation between them, can maintain no action against his principal until he has himself paid the debt for which they are both liable to their creditor, yet, as long ago as 1797, it was determined, by concurrent decisions of the Courts of King's Bench and Common Pleas, that if a surety on a bond for the payment of money at a certain day took a bond from his principal to pay the money, according to the terms of the first bond, to the obligee therein, and to indemnify and save harmless the surety against his liability on that bond, the surety, on the failure of the principal to pay the money on the day when it became due and payable by the

first bond, might maintain an action against him on the second bond without having himself paid the money. *Hodgson* v. *Bell*, 7 T. R. 97. *Holmes* v. *Rhodes*, 1 B. & P. 638. And it was afterwards held by Lord Tenterden and Mr. Justice Bayley that where a man made a bond, reciting that certain land of the obligee was charged with the payment of an annuity which the obligee had engaged to pay, and conditioned that the obligor should pay the annuity and indemnify the obligee from the same, the obligee was entitled, in an action on the bond, to recover the amount of due and unpaid instalments of the annuity without proving that he had paid them. *Penny* v. *Foy*, 8 B. & C. 11, *S. C.* 2 Man. & Ryl. 181.

So where two persons being jointly indebted on a promissory note, the one as principal and the other as surety, the principal covenanted with the surety to pay the amount of the note to the payees on a given day, but made default, and was sued upon his covenant, it was ruled by Lord Abinger at *nisi prius*, and held by Barons Parke, Alderson, Gurney and Rolfe in banc, that the plaintiff was entitled to recover the whole amount, although the note had not been paid; notwithstanding the argument of Erle for the defendant, that the plaintiff had suffered no substantial injury, and was entitled to nominal damages only, and that there was nothing to prevent the payees of the note from suing the defendant, in which case he would have to pay the money twice over. Baron Parke said: " This is an absolute and positive covenant by the defendant to pay a sum of money on a day certain. The money was not paid on that day, nor has it been paid since. Under these circumstances, I think the jury were warranted in giving the plaintiff the full amount of the money due upon the covenant. If any money had been paid in respect of the note since the day fixed for the payment, that would relieve the plaintiff *pro tanto* from his responsibility. The defendant may perhaps have an equity that the money he may pay to the plaintiff shall be applied in discharge of his debt; but at law the plaintiff is entitled to be placed in the same situation under this agreement as if he had paid the money to the payees of 'the bill." *Loosemore* v. *Radford*, 9 M. & W. 657.

In *Robinson* v. *Robinson*, 24 L. T. Rep. 112, by an indenture of dissolution of a partnership between the plaintiff and defendant,

the defendant, to whom all the partnership property was transferred, covenanted to pay and satisfy within eighteen months all the debts of the partnership, (a schedule of which was annexed to the indenture,) and also to indemnify and save harmless the plaintiff against all costs, losses, charges, damages, claims and demands which he might incur or become liable to in respect of the partnership debts. In an action on the defendant's covenant to pay the debts of the partnership, Lord Campbell and Justices Wightman and Erle held that the measure of damages was the whole amount of the debts which he had not paid, whether they had been paid by the plaintiff or he had given promissory notes for them or not. Like decisions have been made in New York, Connecticut and Illinois. *In re Negus*, 7 Wend. 499. *Lathrop* v. *Atwood*, 21 Conn. 117. *Redfield* v. *Haight*, 27 Conn. 31. *Gage* v. *Lewis*, 68 Ill. 604.

In *Robinson* v. *Robinson*, Lord Campbell said: " There is an absolute covenant by the defendant to pay on a day certain, which covenant he has broken, and the plaintiff has been called upon to pay the debt. If the plaintiff had paid the whole in promissory notes, could he not have maintained an action at all during the currency of the notes? He certainly could for the breach of covenant. Then what is the measure of damages? No other can be suggested than the amount of the debt, including that for which promissory notes have been given. It is clear that the plaintiff could bring no fresh action for this same breach of covenant when he had paid the promissory notes; and if he cannot recover the amount in this action he cannot be indemnified. It is true that the defendant incurs the peril of having to pay twice; but that arises from his own default in not performing his covenant. So the case stands upon reason; and there is a superfluity of authority on the same side. The case of *Loosemore* v. *Radford* is on all fours with this case." And Mr. Justice Erle (who had been of counsel in *Loosemore* v. *Radford*) in his concurring opinion observed that in that case " the point of hardship upon the defendant was fully before the court; because they throw out that the plaintiff would hold the money recovered as trustee for the defendant, who might perhaps have a remedy in equity against any misappropriation of it."

In an earlier case, a man, by a settlement made on his marriage, conveyed estates upon certain trusts, and covenanted with the trustees to pay off within a year mortgages to the amount of £19,000, but failed to do so, and was sued at law by the trustees upon the covenant. The interest upon the mortgages had been regularly paid, and no special damage was laid or proved. Follett, for the defendant, argued that the intention of the settlement was that, if any of the mortgages should be enforced against the estates, the trustees should have a remedy against the defendant for any injury thereby caused to the objects of the trust, and the damages must be measured by such injury only; that no injury having been sustained, and the estates having been found sufficient to answer the purposes of the trust and to pay the interest, it could not have been intended that the defendant should be compelled to pay off incumbrances to this large amount; that if any mortgagee chose to enforce his debt, it did not follow that he would proceed against the estates; and that, if the trustees had any claim, they should sue in equity, where justice could be done according to the real merits. But it was held by Lord Tenterden and Justices Littledale, Parke and Taunton, that at law the trustees were entitled to recover the whole £19,000, and that it was for the defendant, if he thought fit, to apply to a court of equity. *Lethbridge* v. *Mytton*, 2 B. & Ad. 772. See also *Carr* v. *Roberts*, 2 Nev. & Man. 42; *S. C.* 5 B. & Ad. 78; *Hodgson* v. *Wood*, 2 H. & C. 649.

Where the assignee of a lessee covenanted in the indenture of assignment to perform all the lessee's covenants in the original lease, one of which was to pay rent, it was held by the old Supreme Court of New York that the lessee could maintain an action against his assignee for rent due and payable under the lease, although he had not himself paid it; and the decision was unanimously affirmed in the Court of Errors, upon the opinion of Chancellor Kent, who said: " We should pervert the plain sense and language of the covenant entered into by Jackson, if we should turn it into a mere covenant to indemnify Port, when it was evidently a covenant to pay the rent for and instead of Port. Port was not bound to go and pay the rent, or have it recovered from him by due course of law, before he could resort to

Jackson. He was not bound to subject himself to such previous distress or inconvenience. Jackson had undertaken to keep his covenant for him, that is, to go and pay the rent as it from time to time became due. If Jackson suffers the rent to be previously collected from Port, that would surely not be keeping and performing Port's covenant, as he had engaged to do. I cannot raise a doubt in my mind as to the construction of the covenant." *Port* v. *Jackson*, 17 Johns. 239, 479, 482.

In *Thomas* v. *Allen*, 1 Hill (N. Y.) 145, a declaration in debt on a bond executed by the grantee to the grantor of land, contemporaneously with the deed, with condition to pay to the plaintiff $800 by satisfying a bond secured by mortgage of the land to a third person, and to save harmless the plaintiff therefrom and from all costs and charges that might be occasioned by the delay or nonpayment of the same, alleged as a breach the nonpayment of the sum on the day when the bond and mortgage became due and payable. A demurrer, because the declaration did not show that the plaintiff had been damnified, was overruled, because this was not a mere bond of indemnity, but obliged the defendant to pay a sum of money, when it became due, for which the plaintiff was bound to a third person. And in *Churchill* v. *Hunt*, 3 Denio, 321, which was an action upon a bond to save harmless and indemnify the plaintiffs against their liability as makers of a promissory note to a third person, and to pay that note, it was held that the plaintiffs might recover the whole amount of the note without having paid anything themselves. To the like effect are *Trinity Church* v. *Higgins*, 48 N. Y. 532, and *Belloni* v. *Freeborn*, 63 N. Y. 383.

In *Stout* v. *Folger*, 34 Iowa, 71, the plaintiff alleged that he and the defendant entered into a contract as follows : " I, E. S. Stout, do hereby sell to John M. Folger all my right, etc. in the hotel known as the Des Moines House, for the consideration of one thousand dollars. In further consideration for said sale, he, the said John M. Folger, hereby agrees to assume in my place and stead, and to save me harmless from, all indebtedness contracted by me, and outstanding against said Des Moines House." The declaration further showed that at the date of the contract there was such a debt for a certain sum outstanding, which had since become payable, and which the defendant had not paid

The defendant contended that his agreement was merely to save the plaintiff from harm by reason of his indebtedness, and that until the plaintiff had paid the debt he was not damnified, and could not recover. But it was held, that the defendant's agreement was not merely to indemnify the plaintiff, but also to assume the plaintiff's debt in his place and stead, which was equivalent to an absolute undertaking to pay the debt; and that the plaintiff was therefore entitled to recover the whole amount of the debt.

In *Wicker* v. *Hoppock*, 6 Wall. 94, the defendant, being in occupation of property as assignee of the lessee, in order to avoid the foreclosure of a mortgage, promised the mortgagee that, if he would sue the lessee for the amount of rent in arrear, and obtain judgment and cause the property to be sold on execution, the defendant would "bid it off for whatever the judgment and costs might be." The mortgagee sued, recovered judgment and had the property sold accordingly; but, the defendant making no bid at the sale, the mortgagee bought the property himself for a nominal sum, and, in an action upon the defendant's agreement, was held by the Circuit Court of the United States, and by the Supreme Court upon a writ of error sued out by the defendant, to be entitled to recover the whole amount of the judgment, without regard to the value of that judgment as against the lessee, or of the property which he had bought at the sale on execution. The Supreme Court said: "If the contract in the case before us were one of indemnity, the argument of the counsel for the plaintiff in error would be conclusive. In that class of cases, the obligee cannot recover until he has been actually damnified, and he can recover only to the extent of the injury he has sustained up to the time of the institution of the suit. But there is a well-settled distinction between an agreement to indemnify and an agreement to pay. In the latter case, a recovery may be had as soon as there is a breach of the contract, and the measure of the damages is the full amount agreed to be paid."

In *Smith* v. *Pond*, 11 Gray, 234, it was alleged in the declaration, and found by the jury, that, in consideration of the delivery by the plaintiff to the defendant of a deed conveying a tract of land to the Ladies' Collegiate Institute, the defendant

promised the plaintiff to pay him the sum of $50, and also to pay for him to the institute the further sum of $100, which the plaintiff had before that time subscribed and agreed to pay to that corporation. The bill of exceptions on file sets forth the evidence introduced at the trial, and the rulings requested and given, more fully than the published report, and states that the plaintiff offered evidence tending to prove the agreement declared on; that the $50 had never been paid by the defendant to the plaintiff; and that the amount of the plaintiff's subscription for $100 " was in a note signed by the plaintiff and payable to said institute; that since said deed was given the plaintiff had been called upon by said institute to pay said note, and had paid $10 in money towards the same, and given his note for $40, and $50 was thereupon indorsed upon said $100 note, and there was $50 of the original note for which the plaintiff had made no provision." The bill of exceptions further shows that, "upon the above evidence, the defendant requested the presiding judge to rule that the plaintiff, if entitled to recover at all, was only entitled to recover the sum of $60 and interest;" (which would include only the $50 which the defendant had promised to pay to the plaintiff, and the $10 which the plaintiff had actually paid in money on account of his subscription;) "but he declined so to rule, but ruled that, if the plaintiff was entitled to recover at all, he was entitled to recover the sum of $150 and interest; and the jury found a verdict accordingly." The defendant alleged exceptions, which were overruled by this court upon the following grounds: " Whenever for an adequate consideration a person expressly promises to pay the debt of another and to save him harmless therefrom, the failure of the latter to perform his agreement by the payment of the debt when it becomes due gives to the former an immediate right of action, on which he will be entitled to recover the whole amount of the debt, although he has not then paid any part of it. Upon that principle, the ruling of the presiding judge must be sustained. Under the contract between the parties, which the verdict shows was fully proved, the defendant became indebted to the plaintiff in the sum of one hundred and fifty dollars. If he had paid fifty dollars to the plaintiff and one hundred dollars to said institute, as he might and ought to have done, those payments would

have fully discharged him from all liability. As he neglected or refused to make the payments according to his promise, the omission constituted a breach of contract, for which it is obvious that the damages to be recovered ought justly to be no less than the full amount of the sum which he had agreed to pay."

In the case at bar, the court is therefore unanimously of opinion that if the defendant, by deed or other writing signed by himself, had promised the plaintiffs to pay the amount of the mortgage to Aitken, the authorities are conclusive that the plaintiffs might have sued him on his agreement, and recovered the whole amount of the mortgage debt, without proving that they had paid it. And in the opinion of the majority of the court the same rule is applicable to this case, for the following reasons:

The fact that the agreement of the defendant is contained, not in a bond, covenant or indenture executed by himself, but in a deed poll made to and accepted by him, affects the mode of declaring only, and not the extent of his liability. By the law of this Commonwealth, affirmed by many decisions, the grantee, by the acceptance of the deed, becomes liable to perform according to its terms any promise or undertaking therein expressed to be made in his behalf, although, not having himself signed the deed, he must, while the old forms of action were retained, have been sued in assumpsit, and not in covenant. *Goodwin* v. *Gilbert*, 9 Mass. 510. *Fletcher* v. *M'Farlane*, 12 Mass. 43, 47. *Phelps* v. *Townsend*, 8 Pick. 392, 394. *Guild* v. *Leonard*, 18 Pick. 511. *Newell* v. *Hill*, 2 Met. 180. *Pike* v. *Brown*, 7 Cush. 133. *Braman* v. *Dowse*, 12 Cush. 227. *Jewett* v. *Draper*, 6 Allen, 434. *McCabe* v. *Swap*, 14 Allen, 188, 192. *Maine* v. *Cumston*, 98 Mass. 317, 319. *Fenton* v. *Lord*, 128 Mass. 466. *Dickason* v. *Williams*, 129 Mass. 182, 184. *Coolidge* v. *Smith*, 129 Mass. 554. See also *Rogers* v. *Eagle Fire Co.* 9 Wend. 611, 618; *Rawson* v. *Copland*, 2 Sandf. Ch. 251.

Such a promise is not within the statute of frauds, because it is a promise implied by law from the acceptance of the deed, and because it is a promise to pay the promisee's own debt to another person. · *Goodwin* v. *Gilbert*, and *Pike* v. *Brown*, above cited. *Alyer* v *Scoville*, 1 Gray, 391. *Hubon* v. *Park*, 116 Mass. 541.

In *Goodwin* v. *Gilbert*, 9 Mass. 510, by an indenture of four parts, Dexter, the lessor, and Hamilton, the lessee of an estate, assigned their interests therein to the plaintiffs; and the plaintiffs thereby covenanted to pay to Odiorne the sum of $12,500 in one year, and another like sum in two years, with interest, in trust for the creditors of Dexter. The plaintiffs afterwards assigned and conveyed this indenture to the defendants by deed poll, containing an agreement that the defendants should pay these sums and interest to Odiorne in manner above mentioned; and the defendants took possession of the premises. In an action of assumpsit on this agreement, apparently brought after the first sum had become payable and had not been paid, a verdict was taken for the defendants, to be set aside and a verdict entered for the plaintiffs for the sum of $15,100, if the action could be maintained. It was argued for the defendants that it could not; and that " the obligation of the plaintiffs to Odiorne was a mere liability, which they may never meet, as the creditors of Dexter may receive their demands from some other source, or may release; and thus the plaintiffs would acquire this money for nothing. All the ground of action they can pretend to is for an indemnity; and such action does not lie until the party is damnified." But the court was of opinion that, " as a general rule, where land is conveyed by deed poll, and the grantee enters under the deed, certain duties being reserved to be performed, as no action lies against the grantee on the deed, the grantor may maintain assumpsit for the non-performance of the duties reserved; " and ordered the verdict for the defendants to be set aside, and a verdict entered for the plaintiffs for the sum mentioned in the judge's report, and judgment to be rendered thereon.

In *Pike* v. *Brown*, 7 Cush. 133, which was a writ of review of an action of assumpsit brought by Brown against Pike, it appeared that Brown, by deed poll, expressed to be in consideration of $4000, conveyed a house and lot to Pike, described as being subject to a mortgage to secure Brown's note to one Walker for $2825, payable in four years with interest, " which said sum is part of the consideration before named, and this deed is on condition that said Pike shall assume and pay said note and the interest thereon, as they severally become due and

payable;" that Pike entered under this deed, and held the estate till an instalment of interest became due; that he did not pay it, and Brown, being liable for it on his note, was called upon to pay it and did pay it to the mortgagee, and brought this action of assumpsit to recover the money so paid. The court held that the action could be maintained; and Chief Justice Shaw, in delivering judgment, said: "The principle is well settled, that where one, by deed poll, grants land, and conveys any right, title or interest in real estate to another, and where there is any money to be paid by the grantee to the grantor, or any other debt or duty to be performed by the grantee to the grantor, or for his use and benefit, and the grantee accepts the deed and enters on the estate, the grantee becomes bound to make such payment, or perform such duty, and, not having sealed the instrument, he is not bound by it as a deed; but it being a duty, the law implies a promise to perform it, upon which promise, in case of failure, assumpsit will lie.' "Again; if we look at the intention of the parties, it seems to us the result is the same. The deed was in form not the conveyance of an equity of redemption, but a conveyance of the estate, though in legal effect it conveyed an equity of redemption. The consideration for the entire estate was $4000, of which Brown's mortgage to Walker was a part, which the defendant assumed and undertook to pay, as part of such consideration. Such payment, when made according to such stipulation, would relieve the plaintiff from his personal obligation to Walker and release the estate from the lien upon it. A stipulation to pay my debt, on a valuable consideration moving from me, accepted by me, in place of so much money, is a promise to me, to indemnify me, and to reimburse me, if, not complying with his undertaking to pay it, he leaves me liable on my note, which I pay on demand." In that case, as the grantor had paid the amount which he sought to recover, the question of the measure of his damages, if he had not paid it, was not presented nor considered.

In *Braman* v. *Dowse*, 12 Cush. 227, the defendant had accepted from the plaintiff a deed poll, expressed to be in consideration of $2700, and containing this clause: "The same premises being subject to a mortgage of $1150.40, which said Dowse is to

assume, it being a part of the above consideration." The mort gage debt was overdue at the date of the deed, and the holder of the mortgage afterwards entered to foreclose it. Before the foreclosure was perfected, the plaintiff, without having paid anything on the mortgage, brought an action of assumpsit upon the defendant's promise to pay the debt. The judge presiding at the trial ruled that the action could not be maintained, and directed a verdict for the defendant; and, upon exceptions taken by the plaintiff to this ruling, it was argued for the defendant that the contract between the parties was merely one of indemnity, and that the plaintiff, at the time of bringing the action having paid nothing, and not having then lost his equity of redemption, had not been damnified, and therefore had no right of action against the defendant. But this court, Chief Justice Shaw delivering the opinion, sustained the exceptions and ordered a new trial, because the acceptance of a deed poll containing such a clause "constitutes a contract and promise by the grantee to the grantor;" and "when the stipulation is to pay the grantor's debt to a third person, it is a good promise by the grantee to the grantor, created by law, on which an action will lie. The nature and terms of such contract are determined by the words in which the reservation is made. The words of the present deed are 'will assume' a certain mortgage described. A reference to that mortgage on record would show that it was a mortgage given as collateral security for the plaintiff's note for the like amount, payable in three years, but then outstanding and overdue. It was part of the consideration money." "The legal obligation undertaken was, if the plaintiff's note was' not then due, to pay it at maturity," and " if the note was then due, the contract was to pay it forthwith, or within reasonable time." "More than a reasonable time had elapsed for such payment to be made, before this action was brought, and therefore the plaintiff had a good right of action, for the breach of this promise, when this action was commenced; and the direction of the judge, that it was prematurely commenced, in effect, that no action would lie until the mortgage should be foreclosed, was incorrect in matter of law." In that case, again, the measure of damages was not determined, because the only question before this court was whether the action could be maintained.

But in *Jewett* v. *Draper*, 6 Allen, 434, where the plaintiff, to secure the payment of his promissory note, executed a mortgage of land to the defendant, stating it to be subject to three prior mortgages, the amount of which the defendant should assume and pay, and was made part of the consideration of the note, it was held, in an action for a breach of the defendant's undertaking, that he had the burden of proving that he had paid the amount of the prior mortgages according to his agreement, because his agreement was to pay that amount, and was "unlike a covenant against incumbrances, or a guaranty, where the plaintiff can recover only nominal damages unless he proves that he has himself removed the incumbrance or paid the debt."

The omission of the deed to state, in so many words, that the amount of the mortgage is part of the consideration, makes no difference in the rights of the parties. Anything that the grantee is required by the terms of the deed to pay or to do is part of the consideration, whether so described in the deed or not. The court cannot weigh the adequacy of the consideration of the contract into which the parties have entered. And in the case at bar, the evidence shows, and the court below has found, that the amount of the mortgage in fact constituted part of the consideration.

The right of action of the grantor against the grantee for the amount of the mortgage does not depend upon that amount being expressed to be part of the consideration, but upon the terms and extent of the grantee's promise. A statement in the deed that the mortgage is part of the consideration will not make the grantee liable to a personal action by the grantor, unless the deed contains a promise by the grantee to pay it. *Fiske* v. *Tolman*, 124 Mass. 254. If, by the terms of the deed accepted by him, he promises to pay it, he is liable, whether it is described as part of the consideration or not.

The legal effect of a conveyance by deed poll containing such a promise on the part of the grantee is that the grantor (instead of receiving by way of consideration the full value of the estate in money, and covenanting to pay off the mortgage himself) conveys all his own interest in the land, in consideration of receiving in money the value of the equity of redemption, and of the further consideration that the grantee undertakes, as between

him and the grantor, to make himself primarily liable for the latter's debt to the mortgagee.

The object of such an agreement may in a general way be said to be to indemnify or protect the grantor against the debt for which he is previously liable. But the manner in which this is to be done is fixed by the terms of the agreement. It is not merely to reimburse him for such damages as he may suffer by being compelled to pay the debt. But it is an agreement by the grantee that he will assume the debt as his own, and that the grantor shall not be called upon to pay it, or be put to any molestation or inconvenience by reason thereof.

To apply the words of Chancellor Kent in *Port* v. *Jackson*, 17 Johns. 482, varied only so far as to meet the circumstances of the case: " We should pervert the plain sense and language of the agreement entered into by the grantee, if we should turn it into a mere promise to indemnify the grantor, when it was evidently a promise to pay the mortgage debt for and instead of the grantor. The grantor was not bound to go and pay that debt, or have it recovered from him by due course of law, before he could resort to the grantee. He was not bound to subject himself to such previous suit or inconvenience. The grantee had agreed to keep his contract for him, that is, to go and pay the debt as it became due."

The promise of the grantee to pay the amount of the existing mortgage is not indeed a promise to pay to the grantor; the payment is to be made to the mortgagee; but the promisee, the only party to the grantee's promise, or from whom a consideration for that promise moves to the grantee, and the only person therefore who can maintain an action at law against the grantee, upon this promise, is the grantor. *Mellen* v. *Whipple*, 1 Gray, 317. *Exchange Bank* v. *Rice*, 107 Mass. 37. *Prentice* v. *Brimhall*, 123 Mass. 291. *National Bank* v. *Grand Lodge*, 98 U. S. 123. *United States Mortgage Co.* v. *Hill*, C. C. U. S. Dist. Mass. May term 1879.

In *Furnas* v. *Durgin*, 119 Mass. 500, the defendant had accepted a deed of conveyance of a parcel of land, therein stated to be " subject to mortgages amounting to $6500, which the grantee hereby assumes and agrees to pay; " and it was adjudged, in accordance with the principles and authorities above stated, that, after the amount of one of those mortgages had

become due and payable and had not been paid by either party, the grantor might maintain an action against the grantee upon his agreement, and recover as damages the amount of the mortgage so remaining unpaid.   The correctness of that decision has been recognized by this court in later cases.   *Valentine* v. *Wheeler*, 122 Mass. 566, 568.   *Fiske* v. *Tolman*, 124 Mass. 254, 256.   *Gaffney* v. *Hicks*, 124 Mass. 301, 304.   See also *Corbett* v. *Waterman*, 11 Iowa, 86; *Snyder* v. *Summers*, 1 Lea (Tenn.) 534, 540, by Cooper, J.   The only decision having an opposite tendency, that has come to our knowledge, is in the comparatively early case of *Burbank* v. *Gould*, 15 Maine, 118, and appears to have proceeded in part upon the form of the action, which was for money had and received, and in part upon grounds inconsistent with the now well-settled law of this Commonwealth.

The grantee being not only authorized, but required, by the terms of the deed which he has accepted, to pay the debt of the grantor to the mortgagee, payment by the grantee to the mortgagee of the amount of that debt would discharge that debt and the mortgage given to secure it.   *Bolton* v. *Ballard*, 13 Mass. 227.   *Kilborn* v. *Robbins*, 8 Allen, 466.   *McCabe* v. *Swap*, 14 Allen, 188.   If such payment were made by the grantee at the day fixed, there would be no breach of his promise to the grantor. If it were made afterwards, the latter, in an action upon that promise, could recover only nominal damages.

If the grantee does not pay *ad diem*, and so breaks his agreement, the fact that he may be also in danger of having the mortgage enforced against his land affords no defence to the action at law by the grantor against him upon his agreement.   If he has any equities, by reason of his failure to pay having been caused by accident, mistake or fraud, or any other matter against which a court of chancery will grant relief, his remedy must be sought in equity, as, for instance, by bill against the mortgagee and the grantor, on which the mortgagee may be ordered to accept payment of the mortgage debt, with proper interest, expenses and costs, and the grantor, upon such payment being made by the grantee, may be restrained from prosecuting his action at law against the latter except for nominal damages.

In accordance with these views, and with the judgment of Baron Parke in *Loosemore* v. *Radford*, 9 M. & W. 658, cited in

the early part of this opinion, it was said in *Furnas* v. *Durgin:* " Perhaps in equity, where a proper case for its interference was shown, a remedy would be afforded, that would secure the party paying under such circumstances from having the payment made by him devoted to any other object than that which would relieve him or his estate from further responsibility. However this may be, the want of elasticity in the forms of the common law, which does not enable us to make such a decree here as would guard the rights of all parties, should not prevent us from giving to the plaintiff the benefit of the contract which he has made, or compel him to remain subject to the burden of the debt which the defendant has agreed to extinguish." " The defendant may, if he will, perform his agreement and pay the debt at any time before final judgment, and the damages then to be recovered will be nominal only." 119 Mass. 508.

The only differences between *Furnas* v. *Durgin* and the case at bar are that in the present case it is not in terms stipulated that the defendant shall "pay" as well as "assume" the mortgage ; and that it is stipulated that he shall "hold the grantors harmless from" the same. These differences do not affect the result. Under such circumstances, in common understanding and in legal effect, to "assume" a debt is an undertaking to pay it as the proper debt of the party who enters into the undertaking. *Braman* v. *Dowse*, 12 Cush. 227. *Drury* v. *Tremont Improvement Co.* 13 Allen, 168, 171. *United States Mortgage Co.* v. *Hill*, above cited. *Stout* v. *Folger*, 34 Iowa, 71. And it is well settled, as appears by the cases already referred to, that when the defendant promises to pay a certain debt due from the plaintiff to a third person, the effect of this promise is not restricted, either as to the form of pleading, the rules of evidence, or the measure of damages, by the fact that the defendant by his agreement further promises to indemnify the plaintiff and save him harmless. *Hodgson* v. *Bell*, *Holmes* v. *Rhodes*, *Penny* v. *Foy*, *Robinson* v. *Robinson*, *Lathrop* v. *Atwood*, *Gage* v. *Lewis*, *Carr* v. *Roberts*, *Hodgson* v. *Wood*, *Thomas* v. *Allen*, *Churchill* v. *Hunt*, *Belloni* v. *Freeborn* and *Stout* v. *Folger*, above cited.

*Exceptions overruled.*

*J. F. Colby*, for the defendant.

*L. W. Howes*, for the plaintiffs.